```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

S.R. RESIDENCE, LLC,            §
                                §
     Plaintiff,                 §
                                §
v.                              §    CIVIL ACTION NO. H-10-4178
                                §
LEXINGTON INSURANCE COMPANY,    §
and ALTERRA EXCESS & SURPLUS    §
INSURANCE COMPANY,              §
                                §
     Defendants.                §
```

MEMORANDUM AND ORDER

Pending are Defendant Max Specialty Insurance Company n/k/a Alterra Excess & Surplus Insurance Company's ("Alterra") Motion for Summary Judgment (Document No. 38) and Amended Motion for Summary Judgment (Document No. 42), and Defendant Lexington Insurance Company's ("Lexington") Motion for Partial Summary Judgment on Plaintiff's Extra-Contractual Damage Claims (Document No. 43) and Motion for Partial Summary Judgment on Plaintiff's Contractual Damage Claims (Document No. 44). After carefully considering the motions, response, oral arguments at hearing on March 21, 2013, and applicable law, the Court concludes as follows.

I. Background

This suit involves an insurance dispute arising from damage caused by Hurricane Ike. Plaintiff S.R. Residence, LLC

("Plaintiff") is the owner of four apartment complexes in Houston.[1] Plaintiff, along with a sizeable number of other commercial property owners, purchased through a limited liability company a single tower of insurance coverage.[2] According to the parties, however, for unknown reasons the additional tiers of coverage in the "tower of insurance" were not in place when Hurricane Ike hit Houston with its massive destructive force, and hence, only the primary coverage and first tier of excess insurance were available for the numerous insureds with their sizeable claims.

Lexington provided the primary layer of coverage under the policy (the "Lexington policy"), which had a $25 million limit of liability for any one occurrence.[3] Alterra issued the first tier excess policy (the "Alterra policy"), which triggered upon exhaustion of the Lexington policy.[4] The Alterra policy had a $10 million limit of liability.[5]

---

[1] *See* Document No. 38 at 3. The properties at issue are: Villa Rosa (5151 South Willow Drive), Happy Homes (10110 Club Creek Drive), Las Brisas (12215 Northwood Forest Drive), and Southern Garden Apartments (9310 Long Point Road). Id.

[2] Id. at 2.

[3] Document No. 44 at 1.

[4] Document No. 38 at 2-3.

[5] Document No. 42 at 7.

Plaintiff filed its claim with Lexington and, although its supporting documents were incomplete,[6] Lexington had adjusters examine the properties and in 2009 paid to Plaintiff $567,417.25 for losses to its Las Brisas property, and in 2010, paid to Plaintiff $736,493.42 for losses to its Villa Rosa property.[7]

Plaintiff filed this suit against Lexington in 2010, alleging that Lexington had breached the insurance contract by failing to make a full payment to Plaintiff.[8]  Plaintiff also alleged that Lexington violated several provisions of the Texas Insurance Code and breached the common law duty of good faith and fair dealing.[9] In June 2011, Lexington informed Plaintiff that its $25 million coverage had been exhausted,[10] and Plaintiff then joined excess insurer Alterra as a defendant.[11]

Lexington moves for summary judgment on the grounds that it exhausted the limits of the Lexington policy through payments to Plaintiff and other insured parties,[12] and in its two motions, Alterra seeks summary judgment first based on Plaintiff's failure

---

[6] Document No. 39 at 4.

[7] Document No. 42 at 4.

[8] Document No. 1, ex. A (Orig. Pet.).

[9] Id.

[10] Document No. 42 at 4.

[11] Document No. 26 (1st Am. Cmplt.).

[12] Document Nos. 43 and 44.

to cooperate in its investigation of the claim and Plaintiff's failure to provide sufficient evidence to raise a genuine issue of material fact on its breach of contract or extra-contractual claims, and second, because Alterra's excess policy limits were exhausted.[13]

Plaintiff has filed no responses in opposition to Alterra's Amended Motion for Summary Judgment or to either of Lexington's two motions for summary judgment.  Under the Local Rules, "[f]ailure to respond will be taken as a representation of no opposition."  Local Rule 7.4.  However, summary judgment cannot be granted solely on the grounds that the non-movant fails to respond.  John v. State of La. (Bd. Of Trs. for State Colls. and Univs., et al), 757 F.2d 698, 709 (5th Cir. 1985).  The moving party must establish the absence of a genuine issue of material fact before it can prevail, and if it fails to do so, summary judgment must be denied.  Id. at 708.

## II.  Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide

---

[13] Document No. 42.

Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly-supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other

hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III. Analysis

A. Contractual Claims

Under Texas law, an insurer is entitled to summary judgment on a breach of contract claim when it presents evidence that it fulfilled its obligations under the policy by paying the insured up to the stated policy liability limits. Vest v. Gulf Ins. Co., 809 S.W.2d 531, 534 (Tex. App.–Dallas 1991, writ denied) (upholding summary judgment for insurer on breach of contract claim where insurer had paid out limits of policy); Coats v. Farmers Ins. Exchange, 230 S.W.3d 215, 219 (Tex. App.–Houston [14th Dist.] 2006, no pet) (same). The summary judgment evidence is uncontroverted that scores of claims were filed by multiple insureds under this "tower of insurance," which was never completed with the contemplated additional tiers of coverage, and that both Lexington and Alterra each paid their full policy limits under their

respective policies.[14]  Both Defendants are entitled to summary judgment denying Plaintiff's breach of contract claims.

B.  <u>Extra-contractual Claims</u>

Plaintiff also alleged unfair settlement practices and failure promptly to pay claims, in violation of Chapters 541 and 542 of the Texas Insurance Code, and bad faith, common law fraud, and conspiracy to commit fraud.  Lexington and Alterra argue that no extra-contractual claims remain once the breach of contract claims are dismissed.

Under Texas law, an insured party generally does not have a bad faith claim when the insurer has not breached the contract. <u>Toonen v. United Servs. Auto. Ass'n</u>, 935 S.W.2d 937, 941 (Tex. App.–San Antonio 1996, no writ) (citing <u>Republic Ins. Co. v. Stoker</u>, 903 S.W.2d 338, 341 (Tex. 1995)).  This rule may not apply, however, where the insurer commits an "act, so extreme, that would cause injury independent of the policy claim" or fails "to timely investigate its insureds' claims." Id. (quoting Republic Ins., 903 S.W.2d at 341).  On this summary judgment record, Plaintiff has

---

[14] At oral argument, Plaintiff did not contest that the exhaustion of the policy limits negated the breach of contract claims.  The parties acknowledged that given the large number of claims and the inadequate coverage available to members of the insurance-purchasing consortium, it ended up being sort of a "first come-first served" situation.  Plaintiff, who could not show even that it filed the policies' required sworn statements of loss, understandably fell behind others of its co-insureds as the insurance companies performed their claims processing.

presented no evidence that it suffered an injury independent of its policy claim.[15]  As for the second exception, Plaintiff concedes that it was unable to produce all of the information Alterra requested pursuant to the terms of the Alterra policy.  The summary judgment evidence is uncontroverted that Alterra repeatedly requested pertinent documentation from Plaintiff.[16]  Despite assurances from Plaintiff's counsel that the documentation would be forthcoming, it was not provided.[17]  Plaintiff's common law bad faith claims fail as a matter of law.  This also precludes Plaintiff's claims for fraud and conspiracy to commit fraud because tort claims such as these require the same predicate for recovery as bad faith causes of action in Texas.  Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 461 (5th Cir. 1997) (granting summary judgment for insurer on claims brought under Article 21.21 of the Texas Insurance Code, now recodified as Chapter 541, on basis that insurer was not found to have acted in bad faith)(citing

---

[15] *See also* Mid-Continent Cas. Co. v. Eland Energy, Inc., –-F.3d--, 2013 WL 656631, at *5 (5th Cir. Feb. 22, 2013 ("...in seventeen years since the decision appeared, no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim, in the first-party claim context . . .").

[16] Document No. 42, exs. H-P.

[17] *See* Id., exs. J, K, L, and N.  There is no evidence that Lexington failed reasonably to investigate Plaintiff's claims.  Lexington produces uncontroverted evidence that it "promptly initiated adjustment of Plaintiff's claims and ultimately paid Plaintiff a total of $1,363,777.99." Document No. 44-3 at 2 (Declaration of William J. May).

Emmert v. Progressive Cty. Mut. Ins. Co., 882 S.W.2d 32, 36 (Tex. App.–Tyler 1994, writ denied)).

Finally, in response to Plaintiff's allegation that Defendants violated the statutory requirement for prompt payment of claims, Alterra's uncontroverted summary judgment evidence is that it first received correspondence from Plaintiff suggesting an intent to submit a claim on February 9, 2012,[18] and that it responded with an acknowledgment of the claim and request for more information on February 14, 2012.[19]  This establishes as a matter of law that Alterra complied with Section 542.055, which it was required to do. As to Sections 542.056 and 542.058, Alterra's obligation to accept or reject Plaintiff's claim was never triggered, given that Plaintiff failed to respond to Alterra's repeated requests for documents required for proof of the claim.

Lexington's summary judgment evidence is that it "promptly initiated adjustment of Plaintiff's claims."[20]  Plaintiff has produced no facts that evidence any violations by Lexington of the Prompt Payment of Claims Act and none was claimed by Plaintiff during oral arguments.  Moreover, Plaintiff does not dispute that it received payments from Lexington on its claims in the total sum

---

[18] Id., ex. G

[19] Id., ex. H (email from counsel for Alterra to counsel for Plaintiff).

[20] Document No. 44-3 at 2 (Declaration of William J. May).

of $1,363,777.99.  Plaintiff has not raised so much as a genuine issue of material fact that either Defendant violated the Prompt Payment of Claims Act, and Defendants are entitled to summary judgment denying that claim.

## V.  Order

Based on the foregoing, which disposes of all claims made by Plaintiff, it is

ORDERED that Defendant Max Specialty Insurance Company n/k/a Alterra Excess & Surplus Insurance Company's Motion for Summary Judgment (Document No. 38) and Amended Motion for Summary Judgment (Document No. 42) are GRANTED, Defendant Lexington Insurance Company's Motion for Partial Summary Judgment on Plaintiff's Extra-Contractual Damage Claims (Document No. 43) and Motion for Partial Summary Judgment on Plaintiff's Contractual Damage Claims (Document No. 44) are GRANTED, and all of Plaintiff S. R. Residence, LLC's claims against both Defendants are DISMISSED on the merits.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 25th day of March, 2013.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE